```
                    IN THE UNITED STATES DISTRICT COURT

                   FOR THE WESTERN DISTRICT OF MICHIGAN

                              SOUTHERN DIVISION

       THE DETROIT INTERNATIONAL BRIDGE COMPANY, ET AL.,

              Plaintiff,                 No.  1:17cv172

        vs.

       KIRK T. STEUDLE,

              Defendant.


       Before:

                              THE HONORABLE JANET NEFF,
                                 U.S. District Judge
                                Grand Rapids, Michigan
                                Monday, June 19, 2017
                            Premotion Conference Proceedings

       APPEARANCES:
                    Neuman Anderson Greico McKenney PC
                    MR. KENNETH F. NEUMAN
                    401 S. Old Woodward Avenue
                    Suite 460
                    Birmingham, MI 48009
                    248-594-5252
                            On behalf of the Plaintiff;

                    MI Dept Attorney General
                    MR. MICHAEL JAMES DITTENBER
                    425 W. Ottawa Street
                    4th Fl.
                    Lansing, MI 48909
                    517-373-1470
                            On behalf of the Defendant.


       REPORTED BY:  MS. KATHY J. ANDERSON, RPR, FCRR
```

```
 1                              June 19, 2017
 2                         PROCEEDINGS, 3:15 p.m.
 3             THE COURT:  This is the date and time set for a
 4   premotion conference in case number 1:17cv172, The Detroit
 5   International Bridge Company, et al. versus Steudle, et al.
 6   Gentlemen, would you please put appearances on the record for
 7   me.
 8             MR. NEUMAN:  Yes, Your Honor.  Ken Neuman for
 9   plaintiffs, N-E-U-M-A-N.
10             MR. DITTENBER:  And Michael Dittenber, Assistant
11   Attorney General for Director Steudle.
12             THE COURT:  Okay.  Before we get into discussing the
13   actual matter of the premotion conference request, Mr. Neuman,
14   I'm curious.  The complaint and the premotion conference
15   response here was filed by Mr. Cox's law firm.
16             MR. NEUMAN:  Yes.
17             THE COURT:  And I won't tell you what I thought of
18   them, but I'm interested to know whether you are comfortable
19   proceeding on that complaint and on that premotion conference
20   request.
21             MR. NEUMAN:  And I appreciate your question.  Had I
22   been the initial attorney on the file, I probably would have
23   presented the claims in a slightly different fashion; and along
24   those lines, it is my recommendation to my client that we add a
25   Section 2 Sherman Act claim, which I would have filed
```

1  initially.

2  And so one of the things that I wanted to disclose to
3  Your Honor, and I've already shared this with brother counsel,
4  is my desire and intent is to file a first amended complaint
5  adding a Sherman Act claim because we do believe the State,
6  which is in our belief acting as a market participant, is
7  acting in a noncompetitive fashion by imposing stricter
8  requirements involving non hazardous material as compared to
9  other State owned bridges such as Blue Water.

10  My thinking, of course subject to Your Honor, is
11  rather than requiring the State to first file their 12(b)(6)
12  motion and then under Federal Civil Procedure 15 filing my
13  first amended complaint, I would suggest, respectfully, that we
14  permit me to file the first amended complaint, put all of our
15  quote unquote cards on the table, and then let the State file
16  whatever 12(b)(6) motion or request for 12(b)(6) motion on the
17  existing claim and the new Sherman Act claim that they may
18  choose to file if they believe that would be appropriate.

19  THE COURT: Well, here's what I would say to that.
20  First of all, I think an amended complaint is appropriate here,
21  but more than an amended complaint, I think a whole new
22  complaint is necessary because the pleadings here filed by
23  Mr. Cox's law firm are, particularly the response to the
24  premotion conference, is almost unintelligible. And that's not
25  the first time I have had that experience with that law firm.

1  But secondly, I would ask you to take an awfully close
2  look at the claims arising under the statute because based on
3  our preliminary research, there is no on point case law on
4  these facts anywhere in the country.  And it seems to me that
5  the reason for that is that it is, it almost goes without
6  saying that a state has not only the responsibility but the
7  duty to regulate the transportation of hazardous materials on
8  its roads.  And the fact that this happens to involve a
9  privately owned bridge is essentially irrelevant.
10  And so I would ask you to be really careful in
11  pleading this case.  If you really think there is a cause of
12  action here, and maybe there is, but really take a close look
13  at what you think your client is entitled to.
14  The second thing I would like to ask is can somebody
15  give me some idea, I went back and looked at the timeline of
16  this case; the Department of Transportation synopsis was issued
17  in December of 2012, the public hearing in April of 2013.  The
18  ultimate ruling that is apparently what is in question here in
19  January of 2014, and this case filed not until February of
20  2017.
21  Now, I don't know what the reason is for the delay.
22  Your client certainly has a well-earned reputation as a serial
23  litigator in the courts of Michigan.  Maybe they cast around
24  and couldn't figure out a good reason to sue somebody for
25  something over this until February of 2017.  But it seems

1  really curious to me that we are in a situation where the
2  outcome of what they're fighting has been clear on the face of
3  things for quite sometime.
4          Let's see.  What else?  What other notes do I have?
5  And certainly we would appreciate it if you can find a case
6  that has any direct bearing on the claims that are made in the
7  Cox complaint.  We would like to find it because we couldn't.
8          Kathie, what questions or comments do you have?
9          THE LAW CLERK:  I think you've covered it.  I think
10 your comments relate to both legal grounds for claims in the
11 case, preemption, as well as the designation, the routing
12 designation itself.  But we didn't -- I didn't find any
13 preemption cases involving these facts.  They all relate to
14 whether state or local regulations are preempted.
15         And in reading the background of the act, including
16 looking at case law, it doesn't seem to me that that's the
17 basis of the preemption provisions in the statute.  The
18 purpose, there are a couple of cases on the purpose of the
19 preemption provisions, and so I think that it is something that
20 also needs to be reviewed.
21         THE COURT:  Mr. Dittenber, do you have any authority
22 for us?
23         MR. DITTENBER:  I found exactly one case that even
24 addresses a routing designation, and in that case the issue was
25 town or county, whatever it was, passed an ordinance that

1  didn't go through any of the process in the statute, so it was
2  preempted on its face.  Essentially nothing as far as type of
3  an analysis that would be required in this case.  Everything
4  was, like you said, state or federal conflicts or preemption of
5  causes of action that someone was trying to sue a trucking
6  company or what have you.
7        THE LAW CLERK:  I do have a question about the way
8  that these disputes generally work.  I'm not familiar with
9  them.
10        And so can you give me a little overview of how and
11  when the petition process comes into play and, you know, where
12  that's occurred in the State where you've petitioned for review
13  in a dispute of a designation?
14        MR. DITTENBER:  Correct me if I'm wrong, but I believe
15  in this instance the petition for review or the request for a
16  re review of the designation that was in place came from the
17  bridge company.  And MDOT performed the public notice, public
18  meetings, issued a recommendation, and then the director in
19  this case chose not to go with that recommendation and keep the
20  current routing designation in place.
21        THE COURT:  Are there -- have there been very many of
22  these kinds of disputes over routing hazardous waste?
23        MR. DITTENBER:  I am not aware of any dispute that
24  would have lasted past the public notice.  You know, there may
25  have been comments to the public notice that perhaps a citizen

1    or concerned company didn't want a certain routing designation,
2    but nothing formal like this, again, to my knowledge, but I've
3    only been here seven years.  Even an administrative claim with
4    the federal agency, I'm not aware of anything going to that
5    level over a routing designation.
6             MR. NEUMAN:  Your Honor, may I say something?
7             THE COURT:  Sure, absolutely.
8             MR. NEUMAN:  In response to your question.  I just
9    want to make sure everybody understands the magnitude of what
10   we are dealing with.  This is not simply hazardous waste.  It's
11   any hazardous material.  And the number one product that falls
12   under the umbrella of nonradioactive hazardous material is
13   gasoline.  And it's my understanding that there is somewhere
14   between 35 and 40 percent of all quote unquote nonradioactive
15   hazardous material that's transported that's gasoline.  And
16   none of that is allowed to be transported from Michigan to
17   Canada over the Ambassador Bridge.  So it's not just simply
18   waste material, it's, like I say, gasoline, it's perhaps
19   materials in the health care industry, aerospace industry.
20   Anything that falls within those seven categories of
21   nonradioactive hazardous material.
22            THE COURT:  Well, I'm not really sure that makes much
23   difference.  But maybe it does.  It seems to me that if I
24   understand the purpose of this statute, it is in a word safety.
25   The regulator, the State, has as a part of its underlying duty

1   to make sure, to the extent that it can, that its citizens are
2   protected from the kinds of disasters that can occur with
3   nonradioactive hazardous materials.  And I think everybody is
4   pretty well familiar with how flammable large amounts of
5   gasoline can be.
6           So it would seem to me that that would fit pretty well
7   into that particular niche.
8           But, again, you know, as Mr. Dittenber says, he's been
9   around seven years, hasn't seen any case go to litigation like
10  this one; we didn't find any.  And that -- I think, Kathie,
11  your search wasn't confined to Michigan, right?
12          THE LAW CLERK:  No.
13          THE COURT:  Or was it?
14          THE LAW CLERK:  No.  No, it was not.
15          THE COURT:  So, you know, I learned pretty quickly,
16  both when I was in practice and when I was on the Court of
17  Appeals, and since I've been here, that where you have a claim
18  that has no precedent, nobody ever thought of this before,
19  right, the first thing that you think of is why is it that
20  there's no, nobody has ever thought of this before.  Well, one
21  of the best explanations is that it's because there is -- it
22  doesn't make any sense.  It's not, it's not the kind of claim
23  that anybody would pursue because it simply doesn't have any
24  legs.
25          Sometimes, I will admit, you get a really creative

1   lawyer, and I would point to the RICO statutes, whoever thought
2   that RICO would be expanded to cover civil claims, I certainly
3   never did, first one I saw was like, wow, what is this.  But
4   that doesn't happen very often.  And I think that you need to
5   consider that in terms of whether your cause of action fits in
6   under the statute that its originally pled under.
7          So there is that.  Anything else?
8          THE LAW CLERK:  I do have one question as a follow-up
9   to preemption.  In your PMC request, paragraph 5, page ID 24,
10  you made the statement that, "The Act contains adequate
11  administrative remedies under which DIBC could challenge
12  preemption such that Ex Parte Young relief is unavailable."
13  What administrative remedies are you referencing?
14         MR. DITTENBER:  If you look at the response filed by
15  DIBC, it refers to both -- I think I said it in here -- anyway,
16  there was a choice of whether, DIBC could have filed a suit in
17  court or it could have filed an administrative action with the
18  appropriate agency, which I want to say is the Pipeline and
19  Material Safety.
20         THE LAW CLERK:  The Department of Transportation.
21         MR. DITTENBER:  Somewhere within the Department of
22  Transportation, I believe.
23         THE LAW CLERK:  So you're agreeing that DIBC has
24  administrative remedies, they have the right to petition under
25  the preemption regulation?

1  MR. DITTENBER: Well, we don't believe that DIBC is a
2  proper plaintiff to challenge this at all. We believe that it
3  has to be somebody directly harmed by the regulation. We
4  believe it would only be motor carriers that are being
5  regulated under the regulation and not a private business
6  that's claiming lost profits; otherwise, you would have, you
7  could have gas stations or truck stops or whoever would claim
8  to be losing money because of a certain routing designation
9  having standing to sue and challenge a routing designation.
10  So I guess the statute allows a proper plaintiff to
11  take one of those two steps, either file in court or file an
12  administrative challenge to the routing designation, but we
13  would have the same position if DIBC tried to challenge it that
14  way as well. It's an alternative argument.
15  THE LAW CLERK: Okay. I think it's important to make
16  that clear if we do proceed to briefing. And make certain that
17  you reference the basis, the statutory or regulatory basis for
18  those administrative challenges. The regulations that were
19  cited in the premotion conference filings didn't make that
20  clear to me. It didn't look like a private party had the right
21  to petition.
22  MR. NEUMAN: For an administrative claim.
23  THE LAW CLERK: Right. And I understand there's the
24  State process that you went through to dispute the routing
25  designation. But I think if you're going to proceed on the

1  basis that they have administrative remedies under the federal
2  statute, then be clear as to what section provides that right.
3          MR. DITTENBER:  Certainly.
4          THE LAW CLERK:  Thanks.
5          THE COURT:  Do either of you have any questions or
6  comments or concerns in addition to what we have talked about
7  so far?  Mr. Neuman.
8          MR. NEUMAN:  I would like to know if in lieu of filing
9  the 12(b)(6) motion at this point if I would be granted
10 permission to file a first amended complaint.  I guess it would
11 be prematurely, right?  Because under Rule 15, 12(b)(6) motion
12 gets filed and then I would have the right to file a first
13 amended.  For judicial economy I would suggest we --
14         THE COURT:  Yeah, I don't see why we should jump
15 through those hoops.  I mean because, as I said, the whole, the
16 way this case is teed up, starting with the complaint and then
17 the response to the State's request to file a 12(b) motion, it
18 really seems that we should hit the reset button and go back
19 and let you file your, you can call it amended complaint, first
20 amended complaint, but what I'm hoping is it will be a real
21 first complaint.  You know what I'm saying.
22         MR. NEUMAN:  I'm clear, Your Honor.
23         THE COURT:  And from there Mr. Dittenber can look at
24 it and determine whether it is within the realm of 12(b).
25 Maybe your Sherman Act claim puts a different cast on things.

1  I don't know.  Maybe you will or will not have a hazardous
2  materials argument.  I don't know.  But I just think we need to
3  reset and go back to the beginning and try to put this case in
4  a posture where it makes some sense to me and hopefully we can
5  get some real honest to goodness exchange of ideas about legal
6  issues.  Okay?
7          MR. NEUMAN:  Yes, Your Honor.
8          THE COURT:  Okay.
9          MR. DITTENBER:  Judge, when he files that complaint,
10 would I be able just to proceed with a motion then or would I
11 schedule another conference?
12         THE COURT:  I think you're going to have to decide
13 that.  I think you're going to have to decide whether, okay,
14 he's filed something that is not amenable to a 12(b) so I'm
15 going to file an answer, or you feel just as you do now, and I
16 think you're going to have to file another request.  You guys
17 are going to have to come back.  I try to avoid that when I can
18 but I think under the circumstances where we are sort of going
19 back to start, I think you're going to have to come back.
20 You're going to have to look at what he says, what his
21 complaint alleges, and determine then whether a 12(b) motion is
22 appropriate from your perspective, file, if you do decide to
23 file a second request for a premotion conference, we will come
24 back and we will talk about it at that time.
25         The order that will go out today will say, first of

all, that the premotion conference request is premature, which is not exactly true but sort of, be a little bit of a fiction, and that the plaintiff has 14 days to file a first amended complaint, and, Mr. Dittenber, be just like we started all over again.

   MR. DITTENBER: That's fine. I just wanted to clarify.

   THE COURT: Okay. Anything else? Any other questions, comments, concerns, complaints? No. Okay.

   MR. DITTENBER: Nothing from our end, Your Honor.

   THE COURT: Okay. Great. Thank you both.

   MR. NEUMAN: Thank you, Your Honor.

   (Proceedings concluded, 3:36 p.m.)

REPORTER'S CERTIFICATE

I, Kathy J. Anderson, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

/s/ Kathy J. Anderson

Kathy J. Anderson, RPR, FCRR

U.S. District Court Reporter

412 Federal Building

Grand Rapids, Michigan  49503